# U.S. DISTRICT COURT
# DISTRICT OF CONN.

3:19-CV-1717-SR

# 42 U.S.C. §1983
# *COMPLAINT*

DOCKET #

WILLIAM PETAWAY
(PLAINTIFF)

VS.

(DEFENDANTS)

"JURY TRIAL" REQUESTED.

*① CITY OF NEW HAVEN.

② NEW HAVEN POLICE DEPT. OFFICER HARPE.

*③ NEW HAVEN POLICE DEPT. OFFICER "JOHN DOE".

*④ NEW HAVEN POLICE DEPT. OFFICER "JOHN DOE".

*⑤ NEW HAVEN POLICE DEPT. CHIEF REYES.

# \* JURISDICTION \*

\* (1) "JURISDICTION" of THIS COURT INVOKED, PURSUANT TO 28 U.S.C. § 1331, IN THAT THIS IS A CIVIL ACTION ARISING UNDER THE U.S. CONSTITUTION.

\* (2) "JURISDICTION" of THIS COURT INVOKED, PURSUANT TO 28 U.S.C. § 1343 (a)(3), IN THAT THIS ACTION SEEKS TO REDRESS THE DEPRIVATION, UNDER "COLOR OF STATE LAW", OF RIGHTS IN THE U.S. CONSTITUTION.

\* (3) THIS ILLEGAL-FALSE "ARREST" CLAIM, IS (NOT) BARRED BY THE HECK RULE:

\* (A) HECK vs. HUMPHREY 512 U.S. AT 487.
\* (B) MUHAMMAD 540 U.S. AT 751—752.

# \* THE PARTIES \*

\*④ THE PLAINTIFF — WILLIAM O. PETAWAY, ON 8/28/2019, WAS A CITIZEN OF THE CITY OF NEW HAVEN. AND WAS (NOT) ON "PAROLE", OR "PROBATION".

\*⑤ THE DEFENDANT — HARPE, ON 8/28/2019, WAS AN (OFFICER) AT N.H.P.D.

\*⑥ THE DEFENDANT — "JOHN DOE", ON 8/28/19, WAS AN (OFFICER) AT N.H.P.D.

\*⑦ THE DEFENDANT — "JOHN DOE", ON 8/28/19, WAS AN (OFFICER) AT N.H.P.D.

\*⑧ THE DEFENDANT — REYES, ON 8/28/19, WAS THE (CHIEF) AT N.H.P.D.

\*⑨ THE DEFENDANT — CITY OF NEW HAVEN (LIABLE) FOR ALL THIER ACTIONS.

# * THE FACTS *

* ⑩ SEE: ATTACHED NEW HAVEN POLICE DEPT. (POLICE REPORT), BY OFFICER HARPE, DATED AUGUST 28, 2019.

* ⑪ PURSUANT TO NEW HAVEN POLICE DEPT. GENERAL ORDER #7.10, DATED OCTOBER 18, 2017. PAGE 1 of 16. THE CASE "FACTS" ARE SUPPOSED TO BE ON (VIDEO).

# * DE FACTO ARREST *

* ⑫ I HEARD YELLING OUTSIDE MY HOUSE, SAW FLASHLIGHTS, AND HARD KNOCKING ON MY DOOR, BY N.H.P.D. OFFICERS, ON 8/28/2019.

* ⑬ I CAME OUTSIDE, TO MY PORCH, WHEN I SAW IT WAS POLICE OFFICERS OF N.H.P.D.

* ⑭ ONCE I STEPPED OUTSIDE MY HOUSE, I WAS IMMEDIATELY (HANDCUFFED), BY A SHORT N.H.P.D. OFFICER, ON 8/28/2019.

# ✶ THE FACTS ✶

* ⑮ I THOUGHT I WAS "UNDER ARREST," BECAUSE OF THE (HANDCUFFS) ON ME.

SEE: N.H.P.D. GENERAL ORDER #5.01, DATED JUNE 6, 2016. PAGE 3 of 9. "ALL ARRESTED PERSONS SHALL BE HANDCUFFED..."

SEE: ATTACHED U.S. VS. BAILEY 743 F.3d AT 342 PAGE, ON "TERRY STOP" (HANDCUFFING).

* ⑯ I ASKED WHY I WAS "UNDER ARREST," BUT SHORT OFFICER, "JOHN DOE," TOLD ME I WAS ONLY BEING "DETAINED."

SEE: N.H.P.D. GENERAL ORDER #5.01, DATED JUNE 6, 2016. PAGE 2 of 9.

* ⑰ I ASKED THE SHORT N.H.P.D. OFFICER "JOHN DOE" WHY "DETAINED"? HE SAID HE DID (NOT) KNOW. THEY ARE HOLDING ME UNTIL N.H.P.D. OFFICER HARPE GETS THERE, TO NOTIFY ME.

SEE: ATTACHED (POLICE REPORT) BY HARPE.

5

# ✶ THE FACTS ✶

✶ ⑱ I WAS PATTED DOWN, BUT WAS STILL LEFT IN (HANDCUFFS), ON MY HOUSE PORCH, BEING GUARDED BY AT LEAST (3) THREE N.H.P.D. OFFICERS, "JOHN DOE AND JOHN DOE."

✶ ⑲ I WAS IN SERIOUS BACK (PAIN). I WAS STABBED IN THE BACK, WITH A GIANT KNIFE, ON JUNE 16, 2018.

✶ ⑳ I WAS HELD, (DETAINED) IN "HANDCUFFS," FOR ABOUT (40) FORTY MINUTES, BY THE OFFICERS AWAITING OFFICER HARPE.

✶ ㉑ N.H.P.D. OFFICER HARPE FINALLY ARRIVED, TOLD ME AN ALLEGED (CRIME) HE IS INVESTIGATING, "INTERVIEWED" ME, WHILE I WAS IN (HANDCUFFS). HARPE GAVE ME NO "MIRANDA WARNINGS," AS REQUIRED. SEE: N.H.P.D. GENERAL ORDER #5.04, DATED JUNE 6, 2016. PAGE 2 OF 4.

# CHIEF (AND) OFFICERS LIABILITY

**★ (22)** CITY OFFICIALS ARE CONSIDERED TO ACT UNDER "COLOR OF STATE LAW."
SEE: <u>MONROE VS. PAPE 365 U.S. AT 172—187</u>

**★ (23)** N.H.P.D. OFFICER HARPE (TOLD) THE "JOHN DOE" OFFICERS TO HOLD PLAINTIFF, IN HANDCUFFS, AND "AWAIT" HIS ARRIVAL.

**★ (24)** N.H.P.D. OFFICERS "JOHN DOE", AND "JOHN DOE", HELD ME IN HANDCUFFS, ON MY PORCH, FOR ABOUT (40) MINUTES, (DETAINED).

**★ (25)** THE HANDCUFFS FOR (40) MINUTES IN "<u>INVESTIGATIVE DETENTION</u>" STATUS, IS A (DE FACTO ARREST), WITHOUT "PROBABLE CAUSE", IN VIOLATION of the 4TH AMENDMENT, of THE U.S. CONSTITUTION.

**★ (26)** ALL ACTING UNDER "COLOR OF STATE LAW", VIOLATED THE 4TH AMENDMENT, MAKES THEM (LIABLE) UNDER 42 U.S.C. § 1983.

<u>7</u>

# *CITY LIABILITY*

**(27)** Under 42 U.S.C. §1983, City of New Haven is "LIABLE" for damages, because the 4th Amendment of U.S. Constitution (violation), resulted from City "policy."

SEE: MONELL 436 U.S. AT 690.

**(28)** City of New Haven is liable, as the "policy" that caused U.S. Constitution (violation), made by the Chief, who is a "policymaker" for N.H.P.D.

SEE: GENERAL ORDER #3.02.02 PAGE 1 of 2.

**(29)** Chief Reyes, (failed) to "update" policy, that would notify N.H.P.D. officials when to, or if they can, apply handcuffs in "investigative detention."

SEE: GENERAL ORDER #5.01.03 "DEFINITIONS." DATED 6/16/16. PAGE 2 of 9 (TERRY STOP).

**(30)** Chief (decision) NOT to update policy to protect 4th Amendment "rights," will constitute the CITY POLICY.

SEE: PEMBAUR 475 U.S. AT 480.

# ✶ RELIEF REQUESTED ✶

THE "PRO SE" PLAINTIFF, RESPECTFULLY REQUESTS THE COURT TO ORDER:

✶ (31) $100,000 IN "COMPENSATORY" DAMAGES, AGAINST EACH DEFENDANT (SEPARATELY), IN THEIR (OFFICIAL) CAPACITIES.

✶ (32) $100,000 IN "COMPENSATORY" DAMAGES, AGAINST EACH DEFENDANT (SEPARATELY), IN THEIR (INDIVIDUAL) CAPACITIES.

✶ (33) $25,000 IN "PUNITIVE" DAMAGES, AGAINST EACH DEFENDANT (SEPARATELY), IN THEIR (INDIVIDUAL) CAPACITIES.

✶ (34) AND ANY OTHER RELIEF COURT SEES FAIR.

"PRO SE" PLAINTIFF,

10/30/19  *William O. Petaway*
WILLIAM O. PETAWAY
650 DIXWELL AVENUE
NEW HAVEN, CT. 06511
#475-222-0510

# REPORTING OFFICER NARRATIVE

**New Haven Police Department**

| Victim | Offense | OCA | Date / Time Reported |
|---|---|---|---|
| FRANCIS, GEORGIA G | INTIMIDATION/THREATENING (W/O) | 19-034471 | Wed 08/28/19 23:40 |

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

On August 28, 2019, at approximately 1919 hours, I was dispatched to 383 Winchester Avenue in the Highville Charter School parking lot, to meet with the complainant of a domestic dispute, who was standing by in her black Chevrolet Equinox. The complainant stated she had a physical and verbal argument with her husband who had left the area in a silver Mercedes.

Upon arrival, I made contact with the complainant who was identified as Georgia Francis. Francis explained her husband, who was identified as William Petaway, assaulted her during an argument that had happen at approximately 1830 hours. Francis said Petaway had placed both of his hands around her neck during an argument to the extent that she could barely breathe. Francis stated she did not require and AMR ambulance crew to respond to the scene to medically access her. I did not observe any swelling, discoloration, scratches, or bruises on Francis's neck. Francis told me she was scared of what Petaway would do if she called the police, so she wanted to report the incident at a location away from her house.

Francis explained she had arrived home from work at 1700 hours with leftover food from her lunch, which was meant for her daughter Octavia Petaway. Francis said William was asleep at the time, and that she placed the food in the back room. Francis said when William woke up that she advised him the food was not meant for him. Francis told me at this point William became agitated and said to her "you better get something for me to eat or I'm going to wild out." Francis said she left Petaway and went into the living room. Francis then described that she had forgotten her cell phone in another room, and when she got up to retrieve it she had observed Petaway eating the food, and took it out of his hands. Francis said Petaway became enrage and began to "growl like an animal" as he placed his hands around her neck and choked her until she could barely breathe. Francis stated she then sat alone in the living room, while Petaway paced around the house. Francis detailed she waited in the living/dining room until she got up and looked out the bathroom window and noticed that Petaway's car had departed its parking space. Francis then traveled to the parking lot at of the Highville Charter School. Francis said that her daughter was in her room for the entirety of the event and had not seen incident.

Ofc's D. Santiago and Correra went to the Francis/Petaway residence to see if Petaway had returned to the area. The Ofc's canvass of the location yielded negative results, but they remained in the area. Francis's relative then informed me that Petaway had returned, and the Ofc's responded to the area to make contact with Petaway and await my arrival.

Upon arrival at the location, I made contact with Petaway who as standing on his front porch. Petaway explained he and Francis had argued earlier because he hadn't eaten in two days, and he wanted the food that she returned from work with. Petaway said his daughter had exited her room and asked why they were arguing and requested for them to stop. Petaway said the argument had not gotten physical, and explained that he did not choke Francis. Petaway stated after the argument he departed the area.

Petaway was arrested without incident and charged with; CGS Breach of Peace in the 2nd degree 53a-181, CGS Assault in the 3rd degree 53a-61, and CGS Strangulation in the 2nd degree 53a-64bb. Petaway was transported to the NHPD's Detention Center at 1 Union Avenue via prisoner conveyance van #171.

Francis filled out a Victim's Account Report in regards to this incident.

LAP protocol was followed. Francis screen in at a "high risk" and spoke with LAP Advocate Nicole.



**U.S. v. Bailey, 743 F.3d 322 (2014)**

(ATTACHMENT)

In this case, however, the factors do not demonstrate significant attenuation. The handcuffing was not only an objectively excessive intrusion for this particular investigatory stop, but also the sort of restraint that a reasonable person would "normally associate[ ] with formal arrest." *United States v. Newton,* 369 F.3d at 676. Further, Bailey's statement followed within minutes, if not seconds, of the handcuffing, during which time he was not given *Miranda* warnings.

To be sure, Bailey was told that he was not under arrest, but only being detained while a search was conducted at 103 Lake Drive. But as we have had occasion to observe in making a Fifth Amendment assessment of custody, "telling a suspect that he is not under arrest does not carry the same weight in determining custody when he is in handcuffs as it does when he **\*342** is unrestrained." *Id.* Translated to the Fourth Amendment context, we conclude that because of the conflicting signals implicit in telling a suspect he is not under arrest at the same time that he is being handcuffed—when, as here, handcuffing is the very action that takes a particular detention outside the scope of a reasonable *Terry* stop—something more than a police disclaimer of arrest may be necessary to demonstrate that statements made within moments of the handcuffing were not tainted by that action. No different conclusion is warranted because Bailey's volunteered statements immediately followed the disclaimer's revelation of an ongoing search of the subject premises rather than his handcuffing. The record indicates that the sequence of events—handcuffing, Bailey's inquiry as to the rationale for arrest, police disclaimer of arrest and revelation of search, volunteered exculpatory statements—all followed so quickly one upon another as to preclude the finding of attenuation necessary to remove any taint.

Accordingly, in the absence of a record basis to conclude that the handcuffing exceeding the reasonable scope of a *Terry* stop in this case did not taint Bailey's exculpatory statements so as to allow their admission at trial, the motion to suppress these statements should have been granted.

#### b. *Harmless Error*

Where evidence obtained in violation of constitutional rights is wrongfully admitted at trial, the error can be deemed harmless only if it appears "beyond a reasonable doubt" that it "did not contribute to the verdict obtained." *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *see United States v. Dhinsa,* 243 F.3d 635, 659–64 (2d Cir.2001). The fact that wrongfully admitted evidence takes the form of exculpatory, rather than inculpatory, statements, does not by itself satisfy this standard. *See generally Miranda v. Arizona,* 384 U.S. at 476–77, 86 S.Ct. 1602 (rejecting distinction between inculpatory and exculpatory statements for purposes of Fifth Amendment analysis: "If a statement made were in fact truly exculpatory it would, of course, never be used by the prosecution."). Rather, a court must consider the importance of the erroneously admitted exculpatory statements to the government's proof of guilt in order to assess harmlessness. *See United States v. Quiroz,* 13 F.3d 505, 510 (2d Cir.1993) (rejecting harmlessness challenge to false exculpatory statements admitted in violation of *Miranda,* noting that "false exculpatory statement ... may be an important part of the government's proof"), *abrogated on other grounds by Berghuis v. Thompkins,* 560 U.S. 370, 130 S.Ct. 2250, 176 L.Ed.2d 1098 (2010).[14] A court must be able to conclude that the wrongfully admitted evidence was "unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record," to excuse the error as harmless. *Yates v. Evatt,* 500 U.S. 391, 403, 111 S.Ct. 1884, 114 L.Ed.2d 432 (1991), *overruled on other grounds by Estelle v. McGuire,* 502 U.S. 62, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991); *see United States v. James,* 712 F.3d 79, 101 (2d Cir.2013).

A number of factors properly inform this determination. "[M]ost critical" is the strength of the prosecution's case absent the erroneously admitted evidence. *United States v. Okatan,* 728 F.3d 111, 120 (2d Cir.2011) (internal quotation marks **\*343** omitted). Also relevant are the materiality of the evidence to critical facts in the case and the prosecutor's actions with respect to the evidence at issue. *See id.* In this case, these factors tilt decisively in favor of harmless error.[15]

First, even without Bailey's exculpatory statements, the prosecution had evidence far more significant to its case against Bailey. *See United States v. Treacy,* 639 F.3d 32, 45–46 (2d Cir.2011) (holding erroneous admission of false exculpatory statement harmless where "other evidence in the prosecution's case was vastly more significant to demonstrating [defendant's] actual actions"); *cf. Wood v. Ercole,* 644 F.3d 83, 94–96 (2d Cir.2011) (citing weakness in prosecution case in concluding under more stringent standard applicable to habeas review that admission of statements in violation of Fifth Amendment could not be deemed harmless). The prosecution case consisted of drugs, drug paraphernalia, guns, and ammunition found in the basement apartment