**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| WILLIAM PETAWAY, | | |
| Plaintiff, | | No. 3:19-cv-1717 (SRU) |
| v. | | |
| CITY OF NEW HAVEN, et al., | | |
| Defendants. | | |

**ORDER**

Pursuant to 42 U.S.C. § 1983, William Petaway sues the City of New Haven and four individual officers of the New Haven Police Department ("NHPD"), including the police chief Otoniel Reyes, in their official and individual capacities for violating Petaway's constitutional right under the Fourth Amendment to be free of unreasonable seizures. *See* Compl., Doc. No. 1. In particular, Petaway alleges that on August 28, 2019, several NHPD officers detained him for forty minutes on his front porch in handcuffs until a particular NHPD officer—Officer Harpe—could arrive. *See id.* at ¶¶ 12–21. The NHPD sought out Petaway because Petaway's wife had contacted the NHPD to report that Petaway had strangled her earlier that day. *See* Police Report, Att. to Compl., Doc. No. 1, at 10. In the early stages of this litigation, Petaway has filed numerous motions, and this Order deals with those.

## I. Motion for the NHPD to Adopt a Particular *Terry* Stop Policy (Doc. No. 16)

Petaway asks me to order the "N.H.P.D. Chief to make a (detailed) *Terry* stop 'policy'" that would include guidance on whether NHPD officers can use handcuffs during a *Terry* stop. *See* Mot. for Order, Doc. No. 16, at 1. Petaway asserts that the absence of such a detailed policy will lead to continued constitutional violations. *See id.* at 2. Petaway attaches certain pages

from a directive of the East Haven Police Department that he believes gives officers better guidance on when and how to use handcuffs during a *Terry* stop. *See id.* at 4–6.

Preliminary injunctive relief is an extraordinary remedy and is never awarded as a matter of right. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). A movant seeking a preliminary injunction must establish (1) that he will suffer irreparable harm in the absence of the injunction and (2) either a likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor. *Jolly v. Coughlin*, 76 F.3d 468, 473 (2d Cir. 1996); *Shapiro v. Cadman Towers, Inc.*, 51 F.3d 328, 332 (2d Cir. 1995).

With respect to the first prong of the preliminary injunction test, courts will normally presume that a movant has established that he will suffer irreparable harm in the absence of injunctive relief when the movant claims an alleged violation of a constitutional right. *See Jolly*, 76 F.3d at 482. "[I]f the movant is unable to demonstrate irreparable injury, an injunction cannot issue." *Champagne v. Gintick*, 871 F. Supp. 1527, 1531 (D. Conn. 1994). The likelihood that the movant will suffer irreparable harm must be "actual and imminent," not speculative. *New York v. Nuclear Regulator Comm'n*, 550 F.2d 745, 754 (2d Cir. 1977). When a "plaintiff asks the court to prevent a local police department from enforcing a state penal statute that is designed to protect Connecticut citizens from acts that may be the prelude to physical violence," the court "should be reluctant to grant the plaintiff's request." *Gintick*, 871 F. Supp. at 1531. A requirement for issuing an injunction in such circumstances is that a plaintiff must "demonstrate a real or immediate threat that" the plaintiff will be *again* subjected to the constitutional violation of which he complains. *See id.* (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 112 (1983)).

If the movant is seeking a "mandatory injunction," meaning an injunction that changes the status quo by commanding the opposing party to perform a positive act, then he must satisfy an even higher standard of proof with respect to the second prong of the preliminary injunction test. *D.D. ex rel. V.D. v. New York City Bd. of Educ.*, 465 F.3d 503, 510 (2d Cir. 2006). Such a movant "must make a clear or substantial showing of a likelihood of success on the merits . . . a standard especially appropriate when a preliminary injunction is sought against the government." *Id.* (internal quotation marks and citations omitted). A mandatory preliminary injunction "should issue only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief." *Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 n.4 (2d Cir. 2010) (internal quotation marks omitted).

I will not order the NHPD to adopt a particular *Terry* stop policy because (1) Petaway has not shown that he will suffer irreparable harm in the absence of such relief, and, in any event, (2) Petaway has not met the high bar required to obtain a mandatory preliminary injunction. As an initial matter, it is not clear that Petaway's complaint requests equitable relief. His complaint requests monetary damages and "any other relief [the] court sees fair." Compl., Doc. No. 1, at ¶¶ 31–34. Even assuming that Petaway properly requests injunctive relief, he has not made a clear showing that he is entitled to an order compelling the NHPD to adopt a particular *Terry* stop policy.

Petaway has not met the first prong of the preliminary injunction test because he has not adequately demonstrated that—even if his claim in this case is meritorious—he will be again subjected to an unconstitutional seizure under the Fourth Amendment. Indeed, Petaway does not suggest (or even speculate) that he will be subject to an (unlawful) *Terry* stop again. Thus,

Petaway has not shown that the continued existence of the NHPD's current policies will subject him to actual and imminent irreparable harm.  Petaway's motion could be denied on this ground alone.

Even if not, though, Petaway also falters at the second hurdle of the preliminary injunction test.  Petaway has not made a clear and substantial showing that he will succeed on the merits of his claim.  There is no bright-line rule regarding the use of handcuffs during a *Terry* stop.  Usually, under the circumstances, the use of handcuffs transforms a *Terry* stop into an arrest.  *See, e.g.*, *United States v. Bailey*, 743 F.3d 322, 340–41 (2d Cir. 2014).  Sometimes, under the circumstances, the use of handcuffs does not transform a *Terry* stop into an arrest.  *See, e.g.*, *United States v. Fiseku*, 915 F.3d 863, 873–74 (2d Cir. 2018); *Grice v. McVeigh*, 873 F.3d 162, 168 (2d Cir. 2017).

Petaway alleges that at least three NHPD officers held him in handcuffs for forty minutes.  *See* Compl., Doc. No. 1, at ¶¶ 18–20.  Then, when another officer—Officer Harpe— arrived, Petaway alleges that Officer Harpe interrogated Petaway without giving Petaway his *Miranda* warnings.  *See id.* at ¶ 21.  The Defendants have not answered Petaway's complaint, and their pending motion to dismiss does not meaningfully address the facts of the case.  *See* Mem. in Supp. Mot. to Dismiss, Doc. No. 32, at 1.  However, a police report that Petaway included as an attachment to his Complaint indicates that "Petaway was arrested without incident."  *See* Police Report, Att. to Compl., Doc. No. 1, at 10.  Further, Petaway included as an attachment to a different filing an NHPD "statement transcription," which appears to be an interview with Officer Harpe; that transcript confirms that Petaway was handcuffed when Officer Harpe arrived at his home, but it does not address the amount of time that Petaway had been handcuffed or many of the circumstances surrounding that detention.  *See* NHPD Statement

Transcription, Doc. No. 39, at 5–6. Thus, even though the facts may lean in Petaway's favor at this point in the case, there is no "clear and substantial" indication that Petaway will prevail on the merits.

For the above reasons, Petaway's motion to order the NHPD to adopt or update its *Terry* stop policy, doc. no. 16, is **denied.**

### II.     **Motion to Amend Complaint** (Doc. No. 27)

On January 22, 2020, Petaway filed a motion to amend his complaint and included in that motion a copy of the amended complaint that he intends to file. *See* Mot. to Am. Compl., Doc. No. 27. Petaway intends to add two new defendants to this case. The first is former NHPD Chief Dean Esserman. *See id.* at ¶ 11. Petaway seeks to hold Chief Esserman liable for the alleged constitutional violation in this case on the same theory that Petaway advances with respect to current NHPD Chief Otoniel Reyes (as municipal "policymakers" in the NHPD). *See id.* at ¶¶ 38–46. The second is Ms. Georgia Francis-Petaway, who is Mr. Petaway's wife—and the complainant who contacted the NHPD in this matter. *See id.* at ¶ 12. Petaway seeks to hold Ms. Francis-Petaway liable for assault and battery because—before Petaway allegedly choked her—Ms. Francis-Petaway took food away from Petaway. *See id.* at ¶¶ 25–28.

A party may amend its pleading once as a matter of course within 21 days after serving it or, if the pleading is one to which a responsive pleading is required, within 21 days after service of a such a responsive pleading (or a Rule 12 motion). Fed. R. Civ. P. 15(a)(1). Otherwise, a party may amend its complaint only with the opposing party's written consent or the court's leave. Fed. R. Civ. P. 15(a)(2).

In this case, Petaway filed his complaint on October 31, 2019. *See* Compl., Doc. No. 1. On January 22, 2020, Petaway filed a motion to amend his complaint. *See* Mot. to Am. Compl.,

Doc. No. 27. By that time, the Defendants had neither answered Petaway's complaint nor made a Rule 12 motion in response to it. Thus, Petaway was not entitled to amend his complaint as a matter of course. Petaway also did not obtain the Defendants' written consent to amend his complaint. Thus, the only way Petaway may amend his complaint is if I give him leave to do so. I "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).

I will give Petaway leave to amend his complaint, but only insofar as it adds claims against former Chief Esserman. I will not grant Petaway leave to amend his complaint to include the state law assault and battery claim Petaway wishes to include against his wife, Ms. Francis-Petaway. That is because, even if I were to grant Petaway leave to amend his complaint to include such a claim, I would decline to exercise supplemental jurisdiction over that claim.

In every civil action in which I have original jurisdiction—such as this one because it arises under the laws of the United States—I may exercise supplemental jurisdiction "over all other claims that are so related to claims in the action . . . that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Put differently, I can exercise supplemental jurisdiction over a state law claim if:

> (1) there is a claim arising under the federal constitution or federal laws; (2) the relationship between the federal claim and the state claim permits the conclusion that the entire action comprises but one constitutional case; (3) the federal claim has substance sufficient to confer subject matter jurisdiction on the court; and (4) the state and federal claims derive from a common nucleus of operative fact.

*Townsend v. Sweet*, 2019 WL 4139469, at *10 (D. Conn. Aug. 30, 2019) (citing *Miller v. Lovett*, 879 F.2d 1066, 1071 (2d Cir. 1989), *abrogated on other grounds*, *Graham v. Connor*, 490 U.S. 386 (1989); *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966)). In this case, Petaway's assault and battery claim against his wife is entirely distinct from Petaway's claims against the NHPD and its officers. Petaway's assault and battery claim against his wife regards a fight

between them that precipitated the NHPD's arrival on Petaway's porch.  But it has nothing to do with how the NHPD officers acted towards Petaway or what policies the NHPD had.  In other words, there is no common nucleus of operative fact shared between Petaway's assault and battery claim against his wife and Petaway's constitutional claim for an unreasonable seizure against the NHPD and its officers.  *Cf. Mahwirt v. Ahmed*, 8 F. App'x 125, 127 (2d Cir. 2001) (holding that district court properly declined to exercise supplemental jurisdiction over plaintiff's state law assault and battery claims against his ex-wife).

In sum, I will grant Petaway leave to amend his complaint to include municipal liability claims against former Chief Esserman, but I will not allow Petaway to include an unrelated state law assault and battery claim against his wife.  Thus, Petaway's motion to amend his complaint, doc. no. 27, is **granted in part and denied in part**.  Petaway is instructed to re-file an amended complaint complying with my instructions within twenty-one (21) days of the filing of this Order.  Because I allow Petaway to file an amended complaint, the Defendants' pending motion to dismiss, doc. no. 31, is **denied without prejudice as moot**.

### III.   Motions to Review Petaway's Claims (Doc. Nos. 24, 28, and 44)

On January 9, 2020, Petaway made a motion for me to "review" the "de facto" arrest claim in this case.  *See* Mot. for Review, Doc. No. 24.  In that motion, Petaway essentially asks me to rule in his favor on the merits of this case.  Just eleven days later, on January 20, 2020, Petaway filed a motion inquiring about the "status" of his motion asking me to review the merits of this case.  *See* Mot. for Status, Doc. No. 28.  On April 17, 2020, Petaway filed another motion inquiring about the "status" of his pending motions.  *See* Mot. for Status, Doc. No. 44.

Because I am the judge assigned to Petaway's case, my job, in a sense, is to review Petaway's claim.  But I must do so within the confines of the law.  In this case, the first way in

which I will review Petaway's claims is by taking up the Defendants' response to his complaint. As explained above, I have denied without prejudice as moot the Defendants' pending motion to dismiss. Petaway can expect, though, that the Defendants will file a similar motion to dismiss his amended complaint. Petaway should consider carefully the Defendants' arguments in their prior motion to dismiss when drafting his amended complaint. After the Defendants filed their last motion to dismiss, Petaway filed an opposition the following day. *See* Mem. in Opp'n, Doc. No. 33. If and when the Defendants re-file a motion to dismiss Petaway's amended complaint, Petaway should understand that there is no need to do respond in haste; Petaway will have twenty-one (21) days to file such an opposition, and he should consider carefully the Defendants' arguments and incorporate all his counterarguments into that opposition.

Given the above, I **deny** Petaway's motion for me to review his claim, doc. no. 24, and I **deny as moot** Petaway's motions inquiring about the status of my review, doc. nos. 28 and 44.

## IV.    Motions to Take Judicial Notice (Doc. Nos. 34 and 39)

Petaway has also filed two motions asking me to take judicial notice of various facts and law. In particular, Petaway has asked me to take judicial notice of the fact that Petaway was handcuffed for forty minutes, that no one stated he was "armed and dangerous," and that, as a matter of law, the use of handcuffs during a *Terry* stop violates the Fourth Amendment. *See* Mot. to Take Judicial Notice, Doc. No. 34, at 2. Petaway has also asked me to take judicial notice of certain facts that, he believes, are not "in dispute." Those are: that Petaway was handcuffed on his porch when Officer Harpe arrived; that Officer Harpe interrogated Petaway before giving him *Miranda* warnings; that Petaway's responses were used against him to establish probable cause; and that Officer Harpe violated the Fifth Amendment. *See* Mot. to Take Judicial Notice, Doc. No. 39, at 1–2.

I may take judicial notice of an adjudicative fact when that fact is "not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). I "must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c)(2). I may take judicial notice "at any stage of the proceeding." Fed. R. Evid. 201(d). "The more critical an issue is to the ultimate disposition of the case, the less appropriate judicial notice becomes." *Pina v. Henderson*, 752 F.2d 47, 50 (2d Cir. 1985).

I will not take judicial notice of the facts and law that Petaway had identified. First, I cannot take "judicial notice" of law, and so Petaway's statements about the law of *Terry* stops are not appropriate subjects for judicial notice. Petaway's statements are, in effect, arguments. Further, I will not take judicial notice of the facts that Petaway identifies because they are neither generally known within Connecticut nor do they come from a source whose accuracy cannot reasonably be questioned. Petaway has asked me to take judicial notice of (currently) disputed facts that go to the heart of this case regarding when and how Petaway was handcuffed, questioned, and arrested. Those are not proper subjects for judicial notice, especially at this point. Thus, Petaway's motions asking me to take judicial notice, doc. nos. 34 and 39, are **denied**.

### V.    Conclusion

For the foregoing reasons, Petaway's motion for the NHPD to adopt a particular *Terry* stop policy, doc. no. 16, is **denied**. Petaway's motion to amend his complaint, doc. no. 27, is **granted in part and denied in part**. Petaway's motion for the court to review his "de facto" arrest claim, doc. no. 24, is **denied**. Petaway's motions for the status of the court's review of his

"de facto" arrest claim, doc. nos. 28 and 44, are **denied as moot**.  And Petaway's motions

requesting that I take judicial notice of certain facts and law, doc. nos. 34 and 39, are **denied**.  As

described above, the Defendants' motion to dismiss, doc. no. 31, is **denied without prejudice as**

**moot**.

Petaway is instructed to re-file his amended complaint, which must comply with my

instructions, within twenty-one (21) days of the filing of this Order.


So ordered.

Dated at Bridgeport, Connecticut, this 24th day of April 2020.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge